**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**Eastern Division**

| | | |
|---|---|---|
| In re: | ) | Bankr. Case No.: 24-00151 |
| | ) | |
| We'll Clean Incorporated, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |

**Amended Opinion and Order on Motion for Entry of an Order Determining**
**that Certain Causes of Action are Property of the Estate (Docket 12)**

This matter comes before the court on the Motion of Aja Carr Favors, not individually but

as the chapter 7 trustee for the bankruptcy estate (the "Trustee")[1] of We'll Clean Incorporated (the

"Debtor"), for Entry of an Order Determining that Certain Causes of Action are Property of the

Estate (the "Motion") (BK Dkt. 12).[2] Douglas Smith, U.S. Placement Consultants, LLC, Justin

Arabo, First Rate Insurance Agency, Midland IRA, Inc. FBO Douglas Smith (collectively, the

"Smith Parties") filed a Notice of Objection (the "Objection" or "Obj.") (BK Dkt. 14) thereto,

requesting an opportunity to respond to the Motion in writing.

On Tuesday, March 5, 2024, the matter was heard in court. That day, the court entered an

Order setting a briefing schedule under which the Smith Parties were required to file a response by

March 20, 2024, at which time the court took the matter under advisement. *See* Order (BK Dkt. 15).

The Smith Parties timely filed their response at Docket No. 16. *See* Memorandum in Opposition to

Chapter 7 Trustee Aja Carr Favors' Motion for Entry of an Order Determining that Certain Causes

---

[1] Based on this court's review of the docket, it appears Aja Favors resigned as the chapter 7 trustee of this case on April 23, 2024, and Reed Heiligman was appointed the successor chapter 7 trustee of this case. *See* Letter of Resignation and Appointment (BK Dkt. 18). This court will assume that Mr. Heiligman is continuing to prosecute this Motion (BK Dkt. 12) unless it is informed otherwise. All references to the "Trustee" refer to Aja Favors during her time as chapter 7 trustee and Mr. Heiligman during his time as trustee.

[2] All references to the "BK Dkt." are referring to docket entries in the instant bankruptcy case, *In re We'll Clean Incorporated*, Bankr. No. 24-00151 (Bankr. N.D. Ill. filed Jan. 5, 2024).

of Action are Property of the Estate (hereinafter, "Smith Parties' Mem. in Opp'n" or "Smith Parties' Memorandum in Opposition") (BK Dkt. 16).

## I. Jurisdiction

The court has jurisdiction to hear this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (E), (H), and (O): matters concerning the administration of the estate; counterclaims by the estate against persons filing claims against the estate; orders to turn ·over property of the estate; proceedings to determine, avoid, or recover fraudulent conveyances; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims, respectively. *See* 28 U.S.C. § 157(b)(2)(A), (C), (E), (H), and (O); Motion (BK Dkt. 12), ¶¶ 1-2 (citations omitted). The Smith Parties do not dispute that jurisdiction and venue are proper. *See* Smith Parties' Mem. in Opp'n (BK Dkt. 16), ¶ 1 (citing Motion (BK Dkt. 12), ¶¶ 1-2).

## II. Background

Pre-petition, in 2018, the Smith Parties filed a lawsuit, Case No. 2018-L-10916 (the "State Court Suit") against Todd Stern, Adam Steinberg, and Avalon Ventures Chicago, LLC (collectively, the "Avalon Parties"). *See* Memorandum Opinion and Order (Dkt. 44), p. 1, *Smith v. We'll Clean, Inc.*, No. 19 CV 4098 (N.D. Ill. 2020)[3] (discussing *Smith v. We'll Clean, Inc.*, No. 2018-L-01916 (Cir. Ct. Cook Cnty. filed Oct. 9, 2018)); Motion (BK Dkt. 12), ¶ 15. In the State Court Suit, the

---

[3] The State Court Suit, No. 2018-L-01916, was removed to federal court in the Northern District of Illinois, but was subsequently remanded to state court and reinstated by the state court. *See* Motion (BK Dkt. 12), Ex. B: First Amended Verified Complaint (hereinafter the "Smith and Arabo Complaint"), p. 2.

Smith Parties also sued the Debtor's former sole shareholder and President, David Launius, We'll

Clean Incorporated (the "Debtor"), and a non-Debtor entity 100% owned by the Launius estate,

We'll Clean It, Inc. (collectively, the "Defendants/Counter-Plaintiffs," the "Launius Parties," or the

"Launius Defendants"). *See* Memorandum Opinion and Order (Dkt. 44), p. 1, *Smith v. We'll Clean,*

*Inc.*, No. 19 CV 4098 (N.D. Ill. 2020) (citation omitted); Motion (BK Dkt. 12), ¶ 15.

In 2019, the Launius Parties asserted various "counterclaims" against their co-defendants,

the Avalon Parties.[4] The action is currently pending in state court and the counterclaims/crossclaims

are now being asserted by the Chapter 7 Trustee for the bankruptcy estates of David Launius, We'll

Clean, Incorporated, and We'll Clean It, Inc. (collectively, the "Defendants/Counter-Plaintiffs" or

the "Launius Parties"). *See* Motion (BK Dkt. 12), ¶¶ 6, 13-14, 18, Ex. A: Second Amended Verified

Counterclaim of Defendants/Counter-Plaintiffs (the "Operative Counterclaim"), p. 1.[5]

The Trustee asserts that each of the claims against the Avalon Parties, including three of the

Smith Parties' claims against the Avalon Parties and the Launius Parties' counterclaims, stem from

the Avalon Parties' actions related to their 2018 takeover of a carwash business formerly owned and

operated by the Launius Parties. Motion (BK Dkt. 12), ¶¶ 15 n.4, 16. The Operative Counterclaim

asserts eight (8) causes of action against the Avalon Parties: violation of the (1) Illinois Trademark

Registration and Protection Act; (2) Federal Unfair Competition under The Lanham Act; (3) fraud

in the inducement; (4) theft of trade secrets pursuant to Illinois Trade Secrets Act; (5) fraudulent

---

[4] *See* Memorandum Opinion and Order (Dkt. 44), p. 2 n.1, *Smith v. We'll Clean, Inc.*, No. 19 CV 4098 (citing Fed. R. Civ. P. 13(a), (g)) (explaining that because the claims the Launius Parties asserted were against a co-party in their "counterclaim," the claims they asserted therein are crossclaims, not counterclaims).

[5] Exhibit A to the Motion includes a copy of the Second Amended Verified Counterclaim of Defendants/Counter-Plaintiffs filed in the state court case. *See* Motion (BK Dkt. 12), Ex. A (citing Second Amended Verified Counterclaim of Defendants/Counter-Plaintiffs, *Smith v. We'll Clean, Inc.*, Case No. 2018-L-10916 (Cir. Ct. Cook Cnty. 2018)).

transfer pursuant to Illinois Uniform Fraudulent Transfer Act; (6) tortious interference with business expectancy; (7) assault; and (8) conversion. Motion (BK Dkt. 12), ¶ 14, Ex. A, ¶¶ 162-247.

The Trustee requests that three (3) claims asserted in the Smith and Arabo Complaint against the Avalon Parties be determined to be property of the bankruptcy estate. Motion (BK Dkt. 12), ¶¶ 15-17. These claims are successor liability/fraud exception (Count V), fraudulent conveyance (Count VI), and creation of a constructive trust (Count VIII). *Id.* The Trustee asserts these claims should be determined to be property of the Debtor's bankruptcy estate protected by the automatic stay and properly assertable only by the Trustee because the claims arise out of harm inflicted upon the Debtor. *Id.*, ¶ 17.

A final pretrial conference in the State Court Suit was scheduled for April 15, 2024, and a bench trial was scheduled to begin on April 29, 2024 before Judge Kubasiak. *Id.*, ¶ 18. This court agrees with the Trustee's request, with the exception of Count V.

## A. Counts at Issue Herein

The Trustee concedes that Count VII, intentional interference with contracts, of the Smith and Arabo Complaint is not at issue because the conduct alleged in that count does not affect all creditors of the Debtor's estate. Motion (BK Dkt. 12), ¶ 15 n.4. Thus, the Trustee is not requesting this court to make a determination on that claim. *Id.*

The Smith Parties agree with the Trustee's assertions that Count VI, fraudulent conveyance, of that complaint is property of the estate and may only be asserted by the Trustee. Smith Parties' Mem. in Opp'n (BK Dkt. 16), ¶¶ 2-3, 20 (citations omitted).[6]

---

[6] For a discussion of trustee standing to pursue fraudulent conveyance claims, *see In re Barkany*, 542 B.R. 662, 687-88 (Bankr. E.D.N.Y. 2015).

-4-

They also agree that since the Trustee has standing to pursue the Count VI fraudulent conveyance claim under the Illinois Uniform Fraudulent Transfer Act, the Trustee has standing to pursue the imposition of a constructive trust (Count VIII) out of the underlying Car Wash Proceeds. *Id.*, ¶¶ 2-3, 21 (citation omitted).

However, the Smith parties assert that the Trustee is barred from asserting Count V, successor liability/fraud exception. *Id.*, ¶¶ 2-5, 14. They assert that the Trustee is barred from bringing that claim because the Debtor, We'll Clean Incorporated, was *in pari delicto* with the Avalon Parties. *Id.*, ¶ 14 (citations omitted).

### III. Facts of the State Court Case

The following facts from the State Court Suit are derived from Exhibit B of the Motion. *See* Motion (BK Dkt. 12), Ex. B: First Amended Verified Complaint (hereinafter the "Smith and Arabo Complaint"). Defendant Mr. Launius was the sole shareholder and President of the Debtor (We'll Clean, Inc.) and We'll Clean, It, Inc. Motion (BK Dkt. 12), Ex. B, ¶ 53. One or both of these companies operated a car wash and detailing business located at 2261 N. Clybourn Ave in Chicago, Illinois (the "Car Wash"). *Id.* Avalon Ventures Chicago, LLC ("Avalon") is a registered entity in Illinois, of which Defendants Mr. Stern and Mr. Steinberg are listed as the only two managers. *Id.*, ¶ 60.

In January 2017, Douglas Smith and U.S. Placement Consultants, LLC made a loan to We'll Clean, Inc., We'll Clean It, Inc., and Launius, evidenced by a Promissory Note in the amount of $130,000. *Id.*, ¶¶ 1, 12-13. In July 2017, the Note was amended via an Addendum, pursuant to which the new loan amount was $157,250. *Id.*, ¶ 13.

In July 2017, the Launius Defendants obtained two other loans. *Id.*, ¶¶ 23, 34. Justin Arabo

and First Rate Insurance Agency made a loan to the Launius Defendants, evidenced by a Promissory Note in the amount of $130,000. *Id.*, ¶¶ 2, 23-24. The Launius Defendants obtained a third loan from Midland IRA, Inc. FBO Douglas Smith, evidenced by a promissory note in the amount of $130,000. *Id.*, ¶¶ 1, 34-35.

In November 2017, the Launius Defendants defaulted on the first loan to Douglas Smith and U.S. Placement Consultants, LLC and the second loan to Justin Arabo and First Rate Insurance Agency and have failed to make any subsequent payments. *Id.*, ¶¶ 15, 26. The lenders for both loans accelerated the loans and all principal, interest, and other applicable charges were due and payable. *Id.*, ¶ 18, 29. The lenders issued a notice and demand for payment but the Launius Defendants failed to make such payments as were due under the loan. *Id.*, ¶¶ 19, 30.

At some point, the Launius Defendants also defaulted on the third loan. *Id.*, ¶ 37. Midland IRA, Inc. FBO Douglas Smith then accelerated the loan. *Id.*, ¶ 40.

In or around March 2018, and probably even prior to that time, Mr. Launius came into contact with Defendants Mr. Stern and Mr. Steinberg in relation to debt counseling and/or debt relief services and/or debt cleaning services, including the removal of unsupported or incorrect items from Mr. Launius' credit report. *Id.*, ¶ 54. In or around April 2018, Defendants Mr. Stern and Mr. Steinberg called Mr. Smith and discussed with him over the phone the status of the three loans that the Smith Parties made to the Defendants Mr. Launius, We'll Clean, Inc. and We'll Clean It, Inc. and how these borrowers could catch up on their loan payments. *Id.*, ¶ 55.

The Smith Parties allege that on or around late June 2018, Mr. Smith and Mr. Arabo learned that Mr. Launius was terminated and removed from operating the Car Wash "against Mr. Launius' will and under duress." *Id.*, ¶ 56. The Smith Parties also allege that "[o]n information and belief,

-6-

and beginning on or around March 19, 2018, Defendants Stern, Steinberg and Launius were part of a fraudulent scheme to interfere with the debt negotiations and work-out of the debt between [the Smith Parties] and Launius and to transfer the Car Wash in an attempt to avoid the liabilities of Launius, We'll Clean, Inc. and We'll Clean It, Inc., which included the three loans which are the subject matter of Counts I through III . . . ." *Id.*, ¶ 57. "The transfer included but was not limited to the assets of the Car Wash ranging from assets used to clean and detail the customer cars; equipment, machinery, furniture, fixtures and personal property used to operate the Car Wash; inventory and supplies on hand; and intangible assets such as the name of the Car Wash, telephone number, good will and signage associated with the business." *Id.*

The Smith Parties further allege that "[o]n information and belief, in or around April 2018, Stern and Steinberg prepared or caused to be prepared through legal counsel, an Asset Purchase Agreement proposing that We'll Clean, Inc. be sold to 'Avalon Ventures, Inc. d/b/a We'll Clean' . . . ." (hereinafter "Avalon") for $50,000. *Id.*, ¶ 58. The Asset Purchase Agreement (APA) also required the Seller to deliver a Bill of Sale at the Closing which would convey title to the Acquired Assets and Personal Property. *Id.* The purchase price per the APA was to be paid "in the form of a Seller Management Agreement." *Id.*, ¶ 59.

The Smith Parties allege that "[o]n information and belief," in or around April 2018, Defendants Mr. Stern and Mr. Steinberg prepared or had legal counsel prepare a "Management Agreement proposing that Launius 'manage' the Car Wash for Avalon, the purported new owner of the Car Wash." *Id.*, ¶ 62. Under the Management Agreement, Mr. Launius was to receive a $50,000 "management fee," payable over six (6) monthly installments. *Id.*, ¶ 63. The Smith Parties further alleged that "[o]n information and belief," at some point, Mr. Launius was to receive a "49% interest

in Avalon after the proposed transfer" and would also "receive a salary of $125,000.00 per year after such transfer." *Id.*, ¶ 64.

The Smith Parties assert, on information and belief, that the "purchase price and management fee were part of a fraudulent scheme to double-count illusory consideration in a transfer of the Car Wash." *Id.*, ¶ 65. However, the Smith Parties assert, on information and belief, that Mr. Launius was never paid the $50,000 management fee or the $125,000 salary. *Id.* They assert on information and belief that Defendants Mr. Launius, Mr. Stern, and Mr. Steinberg orchestrated a scheme under which, after transferring his interest in the Car Wash, Mr. Launius would file for chapter 7 bankruptcy to discharge his personal debts, including the three loans, using a law firm recommended by Mr. Stern and Mr. Steinberg. *Id.*, ¶ 66.

They assert on information and belief that Mr. Launius either failed or refused to file for bankruptcy and/or otherwise disagreed with Stern and Mr. Steinberg regarding "how to proceed with the fraudulent scheme and Defendant Launius apparently had a falling out with Defendants Stern and Steinberg." *Id.*, ¶ 68. They further allege on information and belief that Mr. Launius "under pressure and duress" from Mr. Stern and Mr. Steinberg "either assigned his rights to the Car Wash lease or terminated his Car Wash lease under threat of violence and/or coercion." *Id.*, ¶ 69.

They also assert on information and belief that Mr. Stern, Mr. Steinberg, or Avalon "reimbursed the property owner of the Premises, Rick Levinson or his company, 2261 N. Clybourn, LLC, for the property owner's legal fees incurred in preparing a termination of lease of We'll Clean, Inc. dated May 14, 2018 and the lease for Avalon made as of the next day, May 15, 2018." *Id.* They argue that the assets of the Car Wash were ultimately transferred on May 15, 2018 to Avalon, Mr. Stern, and Mr. Steinberg, "who then proceeded to operate the Car Wash at the same leased premises

at 2261 N. Clybourn Ave., using the assets, signage and essentially the same employees as were used when Launius and the We'll Clean entities operated the Car Wash." *Id.*

## IV. Discussion

Section 541(a) of the Bankruptcy Code provides that, with few enumerated exceptions, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Section 323(b) "gives the trustee the right to prosecute causes of action belonging to the estate . . . ." *Barber v. First Nat'l Bank (In re Ostrom-Martin, Inc.)*, 188 B.R. 245, 251 (Bankr. C.D. Ill. 1995) (citing 11 U.S.C. § 323(b)). These actions "fall into two categories: those brought by the trustee as successor to the debtor's interest in the estate; and those brought under the trustee's avoiding powers." *Id.* (citation omitted). "Under the first group, the trustee stands in shoes of the debtor and may only institute whatever actions the debtor could have brought itself and is subject to the same defenses as could have been asserted by the defendant had action been brought by the debtor." *Id.* (citing *Yale II Mining Assocs. v. Gilliam*, 586 F.Supp. 893, 896 (W.D. Va. 1984); *In re Ahead by a Length*, 100 B.R. 157, 173 (Bankr. S.D.N.Y. 1989)). "It is only when the trustee is exercising his avoiding powers that he accedes to a superior status and possesses extraordinary rights." *Id.*

Here, the Trustee seeks an order determining that the causes of action asserted by Mr. Smith and Mr. Arabo in Counts V, VI, and VIII of the Smith and Arabo Complaint are property of the estate, and may only be asserted by the Trustee in the State Court Suit. Motion (BK Dkt. 12), ¶¶ 15-17. The present case is not brought under the Trustee's avoiding powers.

As explained above, only Count V (successor liability/fraud exception) is at issue here, since this is the only claim in the Smith and Arabo complaint that the Smith Parties argue the Trustee

-9-

cannot bring.  Smith Parties' Mem. in Opp'n (BK Dkt. 16), ¶¶ 3-5, 20-21.  The Smith Parties assert

that the doctrine of *in pari delicto* bars the Trustee from prosecuting Count V.  *Id.,* ¶ 14.  They assert

that the Debtor, We'll Clean Incorporated, as a corporation can act only through its authorized

officers and agents, and therefore Mr. Launius' participation in the fraudulent scheme, as the

President and sole shareholder of the Debtor, is attributable to the Debtor.  *Id.,* ¶ 11 (citing *Mier v.

Staley*, 28 Ill. App.3d 373, 378, 329 N.E.2d 1 (Ill. App. 1975)).

## A. Trustee Standing

"State law governs the causes of action that can be asserted by a bankruptcy trustee and by

creditors."  *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348 (7th Cir. 1987); *see

also Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 598 (7th Cir. 2012) ("[S]tate law defines

the 'property' that enters the bankruptcy estate, unless a provision in the Bankruptcy Code displaces

state law.") (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d

13 (2000); *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

In *Koch*, the Seventh Circuit explained the difference between claims that the trustee may

bring, known as "general" claims, versus claims that the trustee cannot bring, known as "personal"

claims.  *Koch*, 831 F.2d at 1348-49.  Regarding "personal" claims, the Seventh Circuit explained

that:

> [T]he trustee has no standing to bring personal claims of creditors. A cause of action
> is "personal" if the claimant himself is harmed and no other claimant or creditor has
> an interest in the cause. But allegations that could be asserted by any creditor could
> be brought by the trustee as a representative of all creditors.

*Koch*, 831 F.2d at 1348-49.

The Seventh Circuit then defined general claims:

[I]f the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim.

A trustee may maintain only a general claim. His right to bring a claim "depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors."

*Koch*, 831 F.2d at 1348-49 (first citing *3A Fletcher Cyc Corp.*, §§ 1134, 1277.1 (rev. perm. ed. 1986); then quoting *Cissell v. Am. Home Assurance Co.*, 521 F.2d 790, 793 (6th Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976) (trustee lacked standing to seek performance of an insurance policy on behalf of certain specific creditors of the debtor); and then citing *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037 (2d Cir.1986), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986)).

When courts are determining whether an action "accrues individually to a claimant or generally to the corporation," they must "look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors." *Id.* at 1349.

### 1. Successor Liability

In Illinois, "[t]he well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Groves of Palatine Condo. Ass'n v. Walsh Constr. Co.*, 2017 IL App (1st) 161036, ¶ 57, 77 N.E.3d 687, 693 (Ill. App. 2017) (citing *Vernon v. Schuster*, 179 Ill.2d 338, 344-45, 228 Ill.Dec. 195, 198, 688 N.E.2d 1172, 1175 (Ill. 1997)); *see also People ex rel. Dep't of Human Rights v. Oakridge Healthcare Ctr., LLC*, 2020 IL 124753, ¶ 20, 181 N.E.3d 184, 192 (Ill. 2020) (citing *Vernon*, 179 Ill.2d at 344-45, 688 N.E.2d at 1175) (explaining that the common-law "rule of successor corporate nonliability" still

-11-

applies in Illinois).

There are four (4) exceptions to the general rule of successor corporate nonliability, where (1) "there is an express or implied agreement of assumption"; (2) "the transaction amounts to a consolidation or merger of the purchaser or seller corporation"; (3) "the purchaser is merely a continuation of the seller"; or (4) "the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Walsh*, 2017 IL App (1st) 161036, ¶ 57, 77 N.E.3d at 693 (citing *Vernon*, 179 Ill.2d at 344-45); *see also Oakridge*, 2020 IL 124753, ¶ 20 (citing *Vernon*, 179 Ill.2d at 344-45). Count V concerns the fourth exception. *See* Motion (BK Dkt. 12), Ex. B, ¶¶ 52-73.

Bankruptcy courts have ruled that a bankruptcy trustee can bring a claim for successor liability whether sounding in alter ego or other theories when the claim is a general claim common to all creditors and is allowed by state law. *In re PA Co-Man, Inc.*, 644 B.R. 553, 635 (Bankr. W.D. Pa. 2022). The problem for the Trustee is that the Smith parties' claim is for breach of loan agreements which is not common to all creditors. *See Koch*, 831 F.2d at 1348-49 (citations omitted). Those claims represent a specific injury to the Smith parties.

Here, the Smith Parties allege that, as a result of a fraudulent scheme carried out by the Launius Parties and the Avalon Parties (collectively, "the Defendants"), the Defendants not only interfered with debt negotiations and work-out of the debt between the three lenders but also caused the Car Wash to be transferred in order to avoid the liabilities of the Launius Parties on the three loans. *See* Motion (BK Dkt. 12), Ex. B, ¶ 57. The Smith Parties' injury is that their three loans are not being paid. *Id.*, ¶¶ 15, 18-19, 26-30, 37, 40. In turn, the Smith Parties, as the lenders of the three loans to the Launius Parties, seek to hold Avalon Ventures Chicago, LLC liable to them for payment of the three loans due to its managers' involvement in the fraudulent scheme to assist the Launius

-12-

Parties in escaping liability under the loans. *Id.*, ¶¶ 57, 60, 65-67, 73.[7]

## B. *In Pari Delicto*

"[A] person sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy." *Peterson*, 676 F.3d at 598-99 (citations omitted). Illinois courts recognize the doctrine of *in pari delicto*. *King v. First Capital Fin. Servs. Corp.*, 215 Ill.2d 1, 34-35, 828 N.E.2d 1155, 1173 (Ill. 2005).

"The doctrine of *in pari delicto* 'embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Potek v. City of Chi.*, 2022 IL App (1st) 211286, ¶ 60, 217 N.E.3d 192, 208 (Ill. App. 2022) (citing *Nicholson v. Shapiro & Assocs., LLC*, 2017 IL App (1st) 162551, ¶ 10, 82 N.E.3d 529, 532 (Ill. App. 2017) (internal quotation marks omitted); *King*, 215 Ill. 2d at 34, 828 N.E.2d at 1173 (internal quotation marks omitted)).

However, Illinois courts have also stated that:

When the contract is illegal, so that both parties are to some extent involved in the illegality,—in some degree affected with the unlawful taint,—but are not *in pari delicto*,—that is, both have not with the same knowledge, willingness and wrongful intent engaged in the transaction, or the undertakings of each are not equally blameworthy,—a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent. Inequality of guilt exists when the contract is intrinsically illegal, and is of such a nature that the undertakings or stipulations of each, if considered by themselves alone, would show the parties equally in fault, but there are collateral and incidental circumstances attending the transaction and affecting the relations of the two parties which render one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like.

*Rees v. Schmits*, 164 Ill. App. 250, 258-59 (Ill. App. Ct. 1911) (citation omitted).

---

[7] Because a complaint may assert several grounds in anticipation of one recovery, the court notes that other parties may assert successor liability claims for different reasons.

Here, it is unclear whether the doctrine of *in pari delicto* bars the Trustee from asserting any of the claims. This is because the Smith Parties allege that Mr. Launius was terminated and removed from operating the Car Wash "against Launius' will and under duress." Motion (BK Dkt. 12), Ex. B, ¶ 56. However, they also allege that "[o]n information and belief, . . . Defendants Stern, Steinberg and Launius were part of a fraudulent scheme to interfere with the debt negotiations and work-out of the debt" between the Smith Parties and Mr. Launis and "to transfer the Car Wash in an attempt to avoid the liabilities of Mr. Launius, We'll Clean, Inc. and We'll Clean It, Inc., "which included the three loans . . . ." that are the subject of the State Court Suit. *Id.*, ¶ 57.

Since the court finds that Count V is not a general claim, i.e., it is a claim personal to the Smith Parties, it does not have to rule on whether the Trustee is barred by the doctrine of *in pari delicto*. Whether the Launius Defendants are barred by the *in pari delicto* doctrine from recovering herein is an issue of fact for the judge or jury who will resolve the issues herein in considering Illinois law that recognizes the exception discussed in *Rees v. Schmits*.

## V. Conclusion

For the reasons explained above, it is hereby ORDERED that the Trustee's Motion (BK Dkt. 12) is granted in part.

The court hereby makes the following determinations regarding the three counts at issue in the Smith and Arabo Complaint in Case No. 2018-L-01916:

1. Count V (successor liability/fraud exception) is not property of the estate. It is a personal claim that may only be asserted by the Smith Parties. *See Koch*, 831 F.2d at 1348-49 (citations omitted). Thus, the Trustee may not assert that claim.

2. Count VI (fraudulent conveyance) is property of the estate, and may only be asserted by the Trustee.

-14-

3. Count VIII (constructive trust) is property of the estate, and may only be asserted by the Trustee.

**Dated:** May 21, 2024

**ENTER:** _____
Honorable Jacqueline P. Cox
Chief U.S. Bankruptcy Judge
Northern District of Illinois

-15-